## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**HOLDING COMPANY OF THE**
**VILLAGES, INC.,**

       **Plaintiff,**

**v.**                                **Case No: 5:22-cv-269-GAP-PRL**

**WORTHMANN LLC and TRIPLE**
**DDD LLC,**

       **Defendants.**

---

### REPORT AND RECOMMENDATION[1]

Before the Court in this trademark infringement case is Plaintiff's renewed motion for entry of default judgment against Defendant Triple DDD LLC ("Triple"). (Docs. 30 & 44).[2] To date, Triple has not made an appearance in this action. For the reasons explained below, I recommend that Plaintiff's motion be **granted**.

### I.    BACKGROUND

As alleged in the amended complaint, Plaintiff, Holding Company of The Villages, Inc., a Florida corporation, is the developer of The Villages community in central Florida, advertising and selling construction services under two of its trademark names and logos.

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] Plaintiff has incorporated by reference their initial motion for default judgment. (Docs. 30 & 44 at ¶ 9).

(Doc. 19 at ¶¶ 10-12 & 29-37). Plaintiff owns the following valid and subsisting federal trademark registrations:

A.  THE VILLAGES trademark No. 2,614,700; and

B.  *The Villages* trademark No. 4,468,815 (the "marks"). (Doc. 19 at ¶¶ 44-47).

Plaintiff also promotes itself through a website with the domain name "thevillages.com[.]" (Doc. 19 at ¶ 37).

Triple is a Florida limited liability company engaged in online marketing and consulting, providing services to roofing and construction businesses. (Doc. 19 at ¶¶ 26–27). Plaintiff claims that Triple, at the direction of Defendant Worthmann LLC ("Worthmann"), was using marks identical and confusingly similar to Plaintiff's marks in advertising construction services to residents of The Villages. (Doc. 19 at ¶¶ 78–96, 116). Specifically, Worthmann had Triple create a website, "thevillagesroofing.com[,]" advertising roofing services for a non-existent company called "The Villages Roofing," using a false address in, and a sign from, The Villages community. (Doc. 19 at ¶¶ 56–66, 84–95, 99–100). Leads the website was generating for "The Villages Roofing" were sent to Worthmann who would then pay Triple commissions. (Doc. 19 at ¶ 61).

On April 18, 2022, Worthmann sent Triple the plaintiff's cease-and-desist letter, and Triple told Worthmann to ignore it.[3] (Doc. 19 at ¶ 124–26 & Doc. 22 at ¶ 126–28). To date, Plaintiff has not heard back from Triple. (Doc. 30 at 3). On July 12, 2022, the website at the domain "thevillagesroofing.com[,]" was taken down. (Doc. 19 at ¶ 129).

---

[3] Specifically, when Worthmann sent Triple the plaintiff's demand letter, Triple's response was: "[t]hat website is so old [laughing out loud] [sic] I think there was a roofing company named The Villages Roofing. I'll just redirect that domain to the villages roofing page on worthmannroofing.com[.] Still going to rank #1 for The Villages Roofing[.]"

On June 9, 2022, Plaintiff initiated this suit against Worthmann. (Doc. 1). On July 21, 2022, Plaintiff filed its first amended complaint, adding Triple as a party, and asserting claims pursuant to the Lanham Act, 15 U.S.C. § 1114(1); the Anti-cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d); and Florida state law. (Doc. 19). On July 28th, the plaintiff served the complaint and summons on Triple. (Doc. 21). Triple failed to file a responsive pleading, and the Clerk entered default on September 6, 2022. (Doc. 28). To date, Triple has not sought to vacate the default or otherwise appeared or defended this action.

On October 11, 2022, Plaintiff filed its initial motion for default judgment against Triple, seeking a permanent injunction, statutory damages, and attorney's fees. (Doc. 30). The Court denied the motion without prejudice, due to the risk of inconsistent verdicts. (Docs. 31 & 32). Thereafter, Defendant Worthmann and Plaintiff agreed to the entry of consent judgment in favor of Plaintiff on all counts, entered on April 11, 2023. (Docs. 40 & 41). Now, Plaintiff has renewed its motion for default judgment against Defendant Triple, removing its request for an award of monetary damages. (Doc. 44 at ¶ 9). Instead, Plaintiff seeks entry of permanent injunctions against Triple, the forfeiture and cancellation of <thevillagesroofing.com> or its transfer to Plaintiff, the destruction of Defendants' advertising and promotional materials and signage bearing THE VILLAGES, declarations of infringement, and any other relief the Court deems proper. *Id.*

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, a two-part process exists for obtaining a default judgment. First, the party must obtain an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Second, "the party must apply to the court for default judgment." Fed. R. Civ. P. 55(b). Although "a default is not treated as an absolute confession by the defendant of

his [or her] liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007) (internal quotation marks omitted). Thus, the court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* Additionally, before entering a default judgment, a court has "an obligation to assure there is a legitimate basis for any damage award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

Further, although "well-pleaded facts in the Complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Recs. Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Philpot*, 317 F.3d at 1266; *see also Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for the award). Finally, under Rule 55(b) the court has discretion to hold an evidentiary hearing to determine appropriate damages, but it is not required to, particularly where there is sufficient evidence in the record. *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 Fed. App'x. 908, 911–12 (11th Cir. 2011).

Under Federal Rule of Civil Procedure 54(b), "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." *Id.*; *Owners*

*Ins. v. Shamblin & Shamblin Builders, Inc.*, No. 8:13–cv–1929–T–30MAP, 2013 WL 6170597, at *1 (M.D. Fla. Nov. 21, 2013); *N. Pointe Ins. v. Glob. Roofing & Sheet Metal, Inc.*, No. 6:12–CV–476–ORL–31, 2012 WL 5378826 (M.D. Fla. Sept. 4, 2012), *report and recommendation adopted*, 2012 WL 5378740 (M.D. Fla. Oct. 31, 2012) ("When a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting a default judgment until the trial of the action on the merits against the remaining defendants" (citing *Northland Ins. v. Cailu Title Corp.*, 204 F.R.D. 327, 330 (W.D. Mich. 2000))).

To determine whether there is just reason for delay, the Court "balance[s] the judiciary's administrative interests with the relevant equitable concerns." *Cardinale v. Wang*, No. 6:21-CV-379-ACC-GJK, 2021 WL 7543624, at *2 (M.D. Fla. Sept. 13, 2021) (citing *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir. 1997)).[4] Just reason to delay includes avoiding the risk of inconsistent judgments, where the defaulting and non-defaulting defendants are jointly liable or are "similarly situated[.]" *See Cardinale*, 2021 WL 7543624, at *2 (explaining similarly situated defendants "have closely related defenses which could, as a matter of logic, exonerate the defendant who defaulted."); *see also Wilcox v. Raintree Inns of Am., Inc.*, 76 F.3d 394 at *3 (10th Cir. 1996).

---

[4] *Ebrahimi* explains the first factor as ensuring the "application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Ebrahimi*, 114 F.3d at 166. The second factor "serves to limit Rule 54(b) certification to instances in which immediate appeal would alleviate some danger of hardship or injustice associated with delay." *Id.* (citations omitted).

## III.   DISCUSSION

### A. Liability

A default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" itself in a lawsuit. Fed. R. Civ. P. 55(a). Here, Triple failed to participate in this case, even though it was provided with notice of it on July 28, 2022. (Doc. 21). Therefore, so long as Plaintiff's factual allegations support each element of its claims, a default judgment is appropriate.

*1. Counts VI & VIII: Trademark Infringement under the Lanham Act*

Plaintiff claims that Triple violated the Lanham Act, 15 U.S.C. § 1114(1), by infringing on its federally registered trademarks—the marks.

To prevail on a claim of trademark infringement, Plaintiff must establish that: (1) it possesses a valid mark; (2) the defendants used the mark or a colorable imitation of the mark; (3) the defendants' use of the mark occurred "in commerce;" (4) the defendants used the mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services;" and (5) the defendants used the mark in a manner likely to confuse consumers. 15 U.S.C. § 1114(1)(a); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1218 (11th Cir. 2008). Plaintiff attached the two trademark registrations for its marks. (Doc. 19-3). After five years of continuous use, the Lanham Act allows the owner of a registered trademark to obtain "incontestable" status. Once a registration has achieved incontestable status, that status is treated as conclusive evidence of the registrant's right to use the trademark, subject to enumerated defenses. 15 U.S.C. §§ 1065, 1115(b); s*ee also Wilhelm Pudenz, GmbH v. Littlefuse, Inc.,* 177 F.3d 1204, 1208 (11th Cir. 1999).

Here, by failing to answer the complaint, Triple admits that Plaintiff registered the two marks and that the marks have obtained incontestable status. This is sufficient to establish that Plaintiff possesses valid marks. Plaintiff has alleged that Triple adopted and began using marks identical and confusingly similar to its trademarks in U.S. commerce. Plaintiff further alleged that Triple used these marks in advertising and promoting its services and the marks were used on its website. Finally, Triple admits (through its default) that its unauthorized use of the marks is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of its services, and the use of the marks were committed with the willful intent to cause confusion.

Because all elements of trademark infringement have been established, Triple is liable for trademark infringement under 15 U.S.C. § 1114(1)(a).

### 2. Count III: Trademark Infringement and Unfair Competition Under Florida Law

Under Florida common law, trademark infringement and unfair competition receive the same analysis as under the Lanham Act. *Gift of Learning Found., Inc. v. TGC, Inc.,* 329 F.3d 792, 802 (11th Cir. 2003) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991)). Because Plaintiff has established the elements of federal trademark infringement, Triple is liable for Florida common law trademark infringement as well.

To prevail on a claim of unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) (or Florida common law), Plaintiff must establish that (1) it had trademark rights in the marks at issue and (2) the defendant adopted a mark that was the same or confusingly similar to the plaintiff's marks such that consumers were likely to confuse the two. *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012). The same facts

supporting a claim of trademark infringement support a cause of action for unfair competition. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991). As discussed above, Plaintiff has established that it has prior rights to the federally registered marks and that Triple's mark is confusingly similar and likely to confuse consumers. Therefore, Triple is also liable for unfair competition under the Lanham Act.

To prevail on a claim of cybersquatting under the Anticybersquatting Consumer Protection Act (ACPA), § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), Plaintiff must establish that: "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

By failing to answer the complaint, Triple admits that the plaintiff's marks are distinctive or famous and entitled to protection, its domain name is identical or confusingly similar to Plaintiff's marks, and it registered or used the domain name with a bad faith intent to profit. Accordingly, all elements of cybersquatting have been established and Triple is liable for cybersquatting under the ACPA.

### B. Damages

Plaintiff is not seeking an award of monetary damages against Triple. Instead, Plaintiff seeks injunctive relief. The Lanham Act specifically provides for injunctive relief. 15 U.S.C. § 1116(a). To determine whether injunctive relief is warranted, Plaintiff must establish: (1) irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships

between the plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Ebay Inc. v. Mercexchange, LLC*, 547 U.S. 388, 391 (2006).

In this case, through default, Triple admits that it is intentionally using Plaintiff's federally registered marks to deceive the public. Plaintiff's counsel sent a cease and desist letter to Triple objecting to the use of the infringing trademarks and Triple never responded. (Doc. 19 at ¶¶ 124–26). Triple's service listings used the words "the villages roofing" and the villages sign. Triple's website used a false address with a location belonging to the Villages Companies. (Doc. 19 at ¶ 131). Triple used the marks to advertise construction and roofing services, in direct competition with Plaintiff who uses the marks for residential real estate construction and development. (Doc. 19 at ¶ 34).

Plaintiff has established irreparable injury to its goodwill and reputation, and that Triple's conduct will continue to damage Plaintiff and confuse the public unless enjoined. Plaintiff has established that monetary damages alone are inadequate to compensate for the continuing use of the registered trademarks. Plaintiff's interest in maintaining the integrity of the goodwill it has built up in its trademarks outweighs any injury Triple may suffer. Moreover, the public interest is served by ensuring that Triple is not confusing the public by using similar, or identical, marks or materials that the plaintiff has legally registered.

Therefore, Plaintiff is entitled to a permanent injunction against Triple that enjoins it from directly or indirectly infringing Plaintiff's rights in its trademarks including: (a) manufacturing, distributing, selling, marketing, advertising, or promoting any goods bearing marks confusingly similar to or identical to Plaintiff's trademarks; (b) engaging in any activity constituting unfair competition with Plaintiff; (c) engaging in any activity that is likely to

dilute the distinctiveness of Plaintiff's trademarks; (d) making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that: (i) Triple's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Triple; (e) registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Plaintiff's trademarks or any other mark that infringes or is likely to be confused with Plaintiff's marks, or any goods or services of Plaintiff, or Plaintiff as their source; (f) directing Triple to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all materials that feature or bear any designation or mark incorporating the plaintiff's marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's marks; (g) directing that Triple recall and deliver up for destruction or other disposition all goods, packaging, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the plaintiff's marks or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's marks; and (h) directing Triple to destroy or deliver up for destruction or transfer all materials in its possession, custody, or control used by it in connection with its infringing conduct, including without limitation its domain. Finally, Plaintiff is entitled to declarations that Triple infringed its marks through using "The Villages Roofing" in connection with construction services, using the domain name <thevillagesroofing.com> to advertise roofing services, and the website content of <thevillagesroofing.com>.

## IV.    RECOMMENDATION

Accordingly, for the reasons stated above, I recommend that Plaintiff's renewed motion for default judgment (Doc. 44) be **GRANTED**, and that an injunction be entered against Triple, permanently enjoining it from using Plaintiff's federally registered trademarks.

Recommended in Ocala, Florida on June 22, 2023.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy